## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **WILLIE V. JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | **1:21-cv-957-RP** |
| | ) | |
| **v.** | ) | **Civil No. ___:21-cv-_____** |
| | ) | **Crim No. 4:10-cr-00287-BCW-1** |
| **WARDEN, FCI Bastrop,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Petitioner, WILLIE V. JONES ("Jones"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. STATEMENT OF JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 2241, which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. A federal prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255(e). See *Gallegos–Hernandez v. United States*, 688 F.3d 190 (5th Cir. 2012).

### II. STATEMENT OF THE GROUND FOR REVIEW

Whether, Jones' conviction is unconstitutional because he is actually innocent of having been a career offender.

## III. <u>STATEMENT OF THE CASE</u>

### A.   <u>Procedural Background</u>

On October 19, 2010, a grand jury sitting in the United States District Court for the Western District of Missouri, Western Division, returned a five (5) count Indictment charging Jones. See Doc. 11.[1] Count 1 charged Jones with Distribution of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). *Id.* Count 2 charged Jones with Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). *Id.* Count 3 charged Jones with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 4 charged Jones with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). *Id.* Count 5 charged Jones with Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* The Indictment also contained an Allegation of Forfeiture pursuant to 21 U.S.C. § 853(a). *Id.*

On May 17, 2011, a Change of Plea Hearing was held and Jones entered a plea of guilty on Counts 3 and 4 of the Indictment. See Doc. 27.

On December 13, 2011, Jones was sentenced to a total term of 260 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 42, 43.

On December 20, 2011, Jones timely filed a Notice of Appeal. See Doc. 44.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Missouri, Western Division, in Criminal No. 4:10-cr-00287-BCW-1, which is immediately followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District Court for the Western District of Missouri, Western Division, in Civil No. 4:14-cv-00438-DW, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2

On November 6, 2012, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") affirming Jones' sentence and conviction. See Doc. 55.

On May 9, 2014, Jones filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied on September 23, 2014. See Doc. 60; CvDocs. 1, 2, 15.

On October 14, 2014, Jones filed a Motion to Alter Judgment Order, which was denied on November 12, 2014. See CvDocs. 16, 18.

On December 18, 2014, Jones filed a Notice of Appeal re: denial of his § 2255 Motion. His appeal was denied on April 3, 2015. See CvDocs. 19, 24.

On March 30, 2020, Jones filed a Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 ("782 Motion"), which was denied on March 16, 2021. See Docs. 64, 67.

**B.**   **Statement of the Facts**

1.   Offense Conduct

In September of 2010, the Kansas City, Missouri, Police Department (KCPD), Street Crimes Unit received information that a male by the name of Willie Jones was selling narcotics from the residence of 2934 East 30th Street, Kansas City, Missouri, and utilizing a cellular telephone. See PSR ¶ 10.

On September 29, 2010, an undercover (UC) detective made contact with Jones by phone and arranged a narcotics transaction for an unknown amount of marijuana. Jones told the UC to meet him in the area of East 31st Street and Benton Boulevard, Kansas City, Missouri, to complete the transaction. See PSR ¶ 11. Jones arrived and asked the UC how much marijuana he wished to

3

purchase. The UC told Jones he wanted seven grams of marijuana. Jones told the UC to wait for him at East 31st Street and Agnes Avenue, Kansas City, Missouri. Jones left, and KCPD surveillance detectives followed Jones directly to 2934 East 30th Street, Kansas City, Missouri. Jones exited the vehicle and entered the front door of the residence. After approximately two minutes, Jones exited the residence and returned to the vehicle. Surveillance detectives followed Jones back to East 31st Street and Agnes Avenue, Kansas City, Missouri. The UC purchased marijuana using $160 of pre-recorded buy money. See PSR ¶¶ 12-13.

On October 1, 2010, a search warrant was obtained for Jones' residence at 2934 East 30th Street, and on October 6, 2010, the search warrant was executed at the residence by KCPD. Upon executing the search warrant, Jones was detained and placed under arrest inside the residence. See PSR ¶¶ 15-16. The search warrant uncovered items related to drug distribution, including 33.28 grams of heroin and 69.34 grams of marijuana, packaged in multiple ways; a loaded Wasr-10 7.62x39mm rifle (AK-47), Serial Number PV189385; a Remington 1148 20-gauge shotgun, Serial Number 3815296; a loaded Kimber .45 caliber handgun, Serial Number K11823; a loaded Kel-Tec .380 caliber handgun, Serial Number JZ078; a loaded .38 caliber revolver, Serial Number 428270; ammunition; body armor; two digital scales, and $7,511 in United States currency. See PSR ¶¶ 17-23.

2.    Plea Proceeding

On May 17, 2011, a Change of Plea Hearing was held before District Judge Dean Whipple. See Doc. 27. Jones pled guilty to possession with intent to distribute heroin [Count 3], in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime [Count 4], in violation of 18 U.S.C. § 924(c). After entering his plea, Jones moved

to withdraw the plea, arguing his counsel had given him inadequate information about the Sentencing Guidelines. See Doc. 28. The District Court denied the motion to withdraw. See Doc. 30.

        3.      <u>Presentence Report Calculations and Recommendations</u>

The PSR recommends that Jones is subject to an enhanced sentence as a Career Offender pursuant to § 4B1.1 of the United States Sentencing Guidelines (USSG). See PSR at ¶ 38. The bases for the enhancement are a 1998 conviction in the Western District of Missouri for possession of a silencer [PSR at ¶ 51] and a 2000 conviction from Johnson County, Kansas, for aggravated robbery and aggravated assault [PSR at ¶ 50]. The abovementioned offenses occurred in September of 1997 and December of 1997 respectively.

Without the Career Offender enhancement, Jones' advisory guidelines for Count 3, possession with the intent to distribute heroin, would be 30-37 months. Additionally, Jones faces a mandatory consecutive sentence of at least 60 months for Count 4, possessing a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c). This would result in an advisory sentencing range of 90-97 months. The Career Offender enhancement, however, dramatically increases the advisory guideline range to 262-327 months pursuant to § 4B1.1(c)(3). That guideline also directs that every offender be considered a Criminal History Category VI. (USSG § 4B1.1(b)).

        4.      <u>Sentencing Proceeding</u>

On December 13, 2011, a Sentencing Hearing was held before District Judge Dean Whipple. See Doc. 42. At the Sentencing Hearing, Jones objected to the PSR, arguing that the two crimes (used to classify him as a career offender) should be counted as a single offense for criminal history

Case 1:21-cv-00957-RP-DH   Document 1-1   Filed 10/20/21   Page 6 of 29

and enhancement purposes. The District Court overruled this objection, holding that the career offender enhancement was applicable. With the career offender enhancement, Jones' Guidelines range was 262 to 327 months imprisonment. The court varied downward slightly, imposing consecutive terms of 200 months for the heroin conviction and 60 months for the firearm conviction, for a total sentence of 260 months imprisonment. See Doc. 43. The Court did not order the payment of any fine, but did order that the mandatory special assessment of $200 be paid. *Id.* A timely Notice of Appeal was filed on December 20, 2011. See Doc. 44.

5.    Appellate Proceeding

On appeal, Jones argued that the District Court should not have applied the career offender enhancement and that his sentence is substantively unreasonable. Jones has also submitted *pro se* filings arguing he should have been permitted to withdraw his plea. Jones also alleged that defense counsel was ineffective when advising him of the sentencing range he faced. The Eighth Circuit affirmed Jones' sentence in all respects. *United States v. Jones*, 698 F.3d 1048 (8th Cir. 2012). Jones sought a petition of certiorari from the Supreme Court, which was also denied. *Jones v. United States*, --- S.Ct. ----, 2013 WL 1481050 (2013).

6.    Postconviction Proceeding

On May 9, 2014, Jones filed a § 2255 Motion, arguing that his trial counsel, Travis Poindexter ("Poindexter"), was ineffective for the following reasons: (1) erroneously concluding and advising Movant that his prior conviction for possession of a firearm with a silencer constituted a crime of violence, which wrongly subjected him to a career offender enhancement; (2) giving Movant "incorrect information as to the maximum sentences he could receive" based on the career offender enhancement, which also prejudiced plea negotiations with the Government; (3) failing to

6

raise or advise Movant that heroin he intended for personal use and not for distribution should be

excluded from the drug quantity calculation; (4) failing to advise Movant that he could not be

convicted for intent to distribute heroin if Movant possessed the heroin for personal use; and (5)

failing to raise the foregoing issues on direct appeal. See Doc. 60; CvDocs. 1, 2. After reviewing the

record and the parties' arguments, the Court rejected all of Jones' arguments for the reasons stated

in the government's opposition brief [CvDoc. 9]. Accordingly, the Court denied Jones' § 2255

Motion and certificate of appealability. See CvDoc. 14.

## IV. COGNIZABLE CLAIMS IN A PETITION FOR A WRIT OF HABEAS CORPUS UNDER § 2241

A federal prisoner may attack the validity of his sentence in a § 2241 petition if he can meet

the requirements of § 2255(e)'s savings clause. A petition for habeas corpus under 28 U.S.C. § 2241

must be filed in the district of confinement. See *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). This

Court has jurisdiction to hear a habeas corpus petition under 28 U.S.C. § 2241 because it is the

closest U. S. District Court to where Jones is incarcerated.

See *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). In *Dorsainvil*, the Court held that a

§ 2241 petition could be used by a federal inmate whose underlying conduct is no longer considered

criminal as a result of intervening statutory interpretation by the United States Supreme Court. See

*Dorsainvil*, 119 F.3d at 251. See also, *Bruce v. Warden Lewisburg USP*, 868 F.3d 170 (3rd Cir.

2017) (explaining that *Dorsainvil* permits access to § 2241 by a federal inmate who presents an

actual innocence theory based on a "a change in statutory caselaw that applies retroactively in cases

on collateral review," so long as that inmate "had no earlier opportunity to test the legality of his

detention since the intervening Supreme Court decision issued").

A petitioner may test the legality of his detention under § 2241 through the § 2255(e) savings clause where the target of the petition is a sentence enhancement, not a conviction, by showing that he is "actually innocent." See *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016); *United States v. Shipp*, 589 F.3d. 1084 (10th Cir. 2009). Where a petitioner asserts factual innocence of his crime of conviction due to a change of law, he may show that his remedy under § 2255 is inadequate or ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law," (2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits such that it is "more likely than not that no reasonable juror would have convicted" the petitioner. *Hill,* 836 F.3d at 595.

Since Congress enacted the AntiTerrorism and Effective Death Penalty Act (AEDPA) in 1996, the lower courts and even this Court have struggled to determine what's left of the Great Writ. In most cases under the AEDPA, prisoners challenging the legality of their convictions or sentences must raise such challenges through a habeas corpus motion under Title 28, United States Code, Section 2255, which the AEDPA significantly narrowed to reduce the number of prisoner motions flooding the courts.

In that task, the AEDPA succeeded, but it has created much debate over whether there are yet exceptions outside the scope of the AEDPA that may still be reviewable despite the AEDPA's strict limitations, some of those claims being reviewable under Title 28, United States Code, Section 2241, often called "the Great Writ," even when a prisoner is challenging the legality of his or her conviction or sentence. On several occasions, this Court has found that one circumstance that qualifies for such exception regularly is when a prisoner makes a substantial showing that he or she

is imprisoned despite being actually, factually innocent of the crime of conviction. This Court has

labeled such an instance as a "miscarriage of justice exception." See *McQuiggin v. Perkins*, 569 U.S.

___,___ 185 L.Ed.2d 1019, 1030-31 (2013):

> [This Court] ha[s] applied the miscarriage of justice exception to overcome various procedural defaults. These include "successive" petitions asserting previously rejected claims, see *Kuhlmann v. Wilson*, 477 U.S. 436 [1 (1986)[], "abusive" petitions asserting in a second petition claims that could have been raised in a first petition, see *McClesky v. Zant*, 499 U.S. 467, 494-95 [] (1991), failure to develop facts in a state court, see *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11-12 [] (1992), and failure to observe state procedural rules, including filing deadlines, see *Coleman v. Thompson*, 501 U.S. 722, 750 [1 (1991); [Murray v.] Carrier*, 477 U.S. [478], at 495-496 [(1986)].
>
> The miscarriage of justice exception, [this Court's] decisions bear out, survived AEDPA's passage. [See] *Calderon v. Thompson*, 523 U.S. 538 [] (1998) ... at 558 []("The miscarriage of justice standard is altogether consistent ... with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence."). In *Bousley v. United States*, 523 U.S. 614, 622 [1 (1998), [the Court] held ... that actual innocence may overcome a prisoner's failure to raise a constitutional objection on direct review. Most recently, in *House*, [the Court] reiterated that a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error. 547 U.S., at 537-538.
>
> These decisions "see[k] to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup [v. Delo]*, 513 U.S., at 324 [(1995)]. Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations.

*McQuiggin*, 185 L.Ed.2d, at 1030-31 (emphasis added).

The decisions in this Court's explanation all point to the fact that the AEDPA should not bar

a reviewing court's decision to adjudicate an actual innocence claim through habeas corpus. Some

of the cited cases above were challenges raised through § 2255, others through § 2241. This Court's

decisions and explanation do not seem to apply such rules to only one of those habeas statutes. This

particularly makes sense for § 2241 habeas petitions because § 2241(a) authorizes:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the
> district court and any circuit judge within their respective jurisdictions.

28 U.S.C. §. 2241(a). While the language of the statute clearly does not require any judge, justice,

or court to review habeas petitions made through § 2241, it bestows the authority to any court or

judge or justice should they choose to review the issue. As such, a court that claims it is not

permitted to review a claim that qualifies under the miscarriage of justice exception raised through

§ 2241 commits error when such a court expresses the erroneous belief that it lacks authority to

review the merits of such a motion.

    This is especially harmful when the claim raised demonstrates the actual  innocence for

which a prisoner is imprisoned. The Ninth Circuit, relying on this Court's holding in *Holland v.*

*Florida*, 560 U.S. 631 (2010), recently explained:

> The actual innocence exception "serves as an 'additional safeguard against
> compelling an innocent man to suffer an unconstitutional loss of liberty,'
> guaranteeing that the ends of justice will be served in full." *McClesky*, at 495
> (quoting *Stone v. Powell*, 428 U.S. 465, 492-93, n.31 [1] (1976)).
>
> . . .
>
> [T]he [Supreme] Court warned in *Holland*:
>
> The importance of the Great Writ, the only writ explicitly protected by the
> Constitution, along with congressional efforts to harmonize the new statute with prior
> law, counsels hesitancy before interpreting AEDPA's statutory silence as indicating
> a congressional intent to close courthouse doors that a strong equitable claim would
> ordinarily keep open. [*Holland*, 130 S.Ct.] at 2562 (internal citations omitted). **It is**
> **difficult to imagine a stronger equitable claim for keeping open the courthouse**
> **doors than one of actual innocence, "the ultimate equity on the prisoner's side."**
> *Withrow v. Williams*, 507 U.S. 680, 700 [] (1993) [](noting that the Supreme Court
> "continuously has recognized that a sufficient showing of actual innocence" is
> normally enough, "standing alone, to outweigh other concerns and justify
> adjudication of the prisoner's constitutional claim"). Indeed, "the individual interest
> in avoiding injustice is most compelling in the context of actual innocence." *Schlup*,
> 513 U.S. at 324.

*Lee v. Lampert*, 653 F.3d 929, 934-35 (CA9 2011) (emphasis added).

Especially taking into account this Court's decisions relied on by the Ninth Circuit Court of Appeals, it seems that a court, judge, or justice does not only err when it procedurally dismisses a § 2241 petition which makes a substantial showing of actual innocence, erroneously believing he or she lacks the authority granted it through § 2241, but also errs even when using its discretion -- as given in § 2241 -- to refuse to review the merits of a colorable showing of actual innocence. This especially makes sense when considering federal resources, as the AEDPA was created to protect. Continuing to incarcerate a person for a mandatory five (5) years for a crime of which he is actually innocent will cost about $141,615 in federal resources, far more than it would cost for a court to review the merits of an actual innocence claim and order the appropriate relief. With that in mind, the concerns the AEDPA usually serves to protect are actually hindered and undermined when a court refuses to adjudicate a substantial showing of actual innocence.

So, considering the above, it seems that courts may and should review colorable claims of actual innocence when submitted through habeas corpus despite procedural bars -- AEDPA's statute of limitations or otherwise -- that would usually  block the way to such review. The remaining question is whether the Great Writ through a § 2241 petition is the type of habeas petition to provide such relief to an actually innocent prisoner. A review of the history of the Great Writ under § 2241 as used to correct the wrongful imprisonment of those actually innocent of the crimes of conviction, as articulated by this Court in *Withrow* and used in *In re Davis*, 557 U.S. 952 (2009), resoundingly answers that question in the affirmative.

See also, *Allen v. Ives*, No. 18-35001 (9th Cir. 2019). The panel reversed the district court's judgment dismissing for lack of jurisdiction Michael Allen's 28 U.S.C. § 2241 habeas corpus petition claiming that he is "actually innocent" of his sentence as a career offender, and remanded

for consideration of the claim on the merits. The panel held that Allen has made a claim of actual

innocence that permits jurisdiction over his § 2241 petition under the 28 U.S.C. § 2255(e) "escape

hatch," which permits a federal prisoner to file a § 2241 petition to contest the legality of a sentence

where his remedy under 28 U.S.C. § 2255 is inadequate or ineffective to test the legality of his

detention.

## V. DISCUSSION

As a preliminary matter, Jones respectfully requests that this Court be mindful that *pro se*

pleadings are to be construed liberally. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014)

(*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers,

and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### Jones' Conviction is Unconstitutional Because He is Actually Innocent of Having Been A Career Offender.

Jones' sentence was driven by his sentencing enhancement under § 4B1.1. This enhancement

virtually increased his sentence. As such, because he is actually innocent of said enhancement, he

should be resentenced to a significantly less harsh sentence.

In a case in which a defendant was incorrectly designated as a career offender based on

later-determined judicial error, the "integrity of the judicial system" would hardly be supported by

requiring that defendant to remain in prison, particularly if he has consistently (and correctly) argued

as to the inapplicability of the enhancement. See *Spencer*, 773 F.3d at 1154 (Martin, J., dissenting);

*Sun Bear*, 644 F.3d at 712 (Melloy, J., dissenting) ("[D]enying relief does not build confidence in

our court system because this looks to the world like a court refusing to acknowledge or make

amends for its own mistake." (quoting *Gilbert*, 640 F.3d at 1334 (Martin, J., dissenting))).

In order for Jones to proceed under 28 U.S.C. § 2241, he must must show that his remedy under § 2255 is inadequate or ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law," (2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits such that it is "more likely than not that no reasonable juror would have [enhanced his sentence]". *Hill,* 836 F.3d at 595.

Jones meets the above requirements as follows:

*Mathis v. United States,* 136 S. Ct. 2243 (2016), *Descamps v. United States,* 133 S. Ct. 2276 (2013), *Johnson v. United States,* 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya,* 138 S. Ct. 1204 (2018) are new interpretations of statutory law. In *Hill,* the government conceded that *Descamps* was retroactive. In *Holt v. United States,* 843 F.3d 720 (7th Cir. 2016), the Court held that substantive decisions such as *Mathis* presumptively apply retroactively on collateral review. See, e.g., *Davis v. United States,* 417 U.S. 333, 94 S. Ct. 2298 (1974); *Montgomery v. Louisiana,* 136 S. Ct. 718 (2016). On June 26, 2015, the United States Supreme Court decided *Johnson,* holding that the Armed Career Criminal Act's (ACCA) definition of "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another" (also known as the residual clause) is unconstitutionally vague. *Id.* at 2557, 2563. On April 18, 2016, it made *Johnson*'s holding retroactive to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016).

These cases apply to the petition's merits such that it is "more likely than not that no reasonable juror [or trier of fact] would have [enhanced his sentence]". *Hill,* 836 F.3d at 595.

With regard to the prior conviction used to enhance Jones under U.S.S.G. § 4B1.1, he was previously convicted of the following "crime of violence" offense:

(1)    2000 conviction from Johnson County, Kansas, for Aggravated Robbery. [PSR ¶ 50]; and

(2)    1998 conviction in the Western District of Missouri for Possession of a Silencer [PSR ¶ 51].

In this case, the District Court erred in determining that Jones was a career offender within the meaning of USSG § 4B1.1, which provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

A "crime of violence" is:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). "[T]he term 'physical force,' as used in [§ 4B1.2(a)(1) ], means 'violent force—that is, force capable of causing physical pain or injury to another person.' " *Johnson v. United States*, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010) (holding that an offense in which the defendant attempted to cause, or knowingly caused, physical injury to another person by means of a deadly weapon was a crime of violence), cert. denied, 132 S.Ct. 213, 181 L.Ed.2d 115 (2011). To constitute a crime of violence under § 4B1.2(a)(2), the crime "must (1) present a serious potential

14

risk of physical injury to another, and (2) be roughly similar, in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)." *United States v. Watson*, 650 F.3d 1084, 1092 (8th Cir.2011) (quotations, alteration, and citation omitted). " '[A] crime involves the requisite risk when the risk posed by the crime in question is comparable to that posed by its closest analog among the enumerated offenses.' " *Id.* at 1092–93 (alteration in original) (quoting *Sykes v. United States*, 131 S.Ct. 2267, 2273, 180 L.Ed.2d 60 (2011)).

In *Dimaya*, the Supreme Court, applying its earlier decision in *Johnson v. United States*, held that the residual (or "risk of force") clause found in 18 U.S.C. § 16(b), as used in the Immigration and Nationality Act's ("INA") definition of "aggravated felony," 8 U.S.C. § 1101(a) (43) (F), is unconstitutionally vague in violation of the Due Process Clause. See also, *Dimaya*, 138 S. at 1213 ("*Johnson* is a straightforward decision, with equally straightforward application here.").

### *Kansas Aggravated Robbery*

The statutory definition of aggravated robbery, as defined in K.S.A. § 21-3427, has "as an element the use, attempted use, or threatened use of physical force against the person of another," and the "force" required by the statute is "violent force," as set out in *Johnson v. United States,* 559 U.S. 133 (2010).

Here, Jones contends that Kansas aggravated robbery does not qualify as a "crime of violence," and he should not be sentenced under the career offender guideline.

Although "physical force" is not defined by the Guidelines, the U.S. Supreme Court held in *Johnson* that "physical force" means "violent force," which is a "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 134. Mere offensive touching will not suffice. *Id.* at 139–42. Accordingly, Jones' prior conviction would only qualify as a crime of violence if the

statute requires the use, attempted use, or threatened use of violent, physical force against the person of another.

At the time of Jones' conviction, Kansas defined simple robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. § 21-3426 (1998) (current version at K.S.A. § 21-5420(a)). K.S.A. § 21-3427 then provided: "Aggravated robbery is a robbery . . . committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." Although the simple robbery statute (K.S.A. § 21-3426) is indivisible [see *United States v. Nicholas*, --- F. App'x ---, 2017 WL 1429788, at *3 (10th Cir. 2017)], the aggravated robbery statute (K.S.A. § 21-3427) is divisible because it sets out elements of the offense in the alternative, creating two distinct offenses. First, the aggravated robbery statute criminalizes robbery "committed by a person who is armed with a dangerous weapon . . . ." K.S.A. § 21-3427 (1998) (current version at K.S.A. § 21-5420(b)(1)). Second, it criminalizes robbery "committed by a person . . . who inflicts bodily harm upon any person in the course of such robbery." K.S.A. § 21-3427 (1998) (current version at K.S.A. § 21-5420(b)(2)). Accordingly, the Court should employ the modified categorical approach to determine which of these alternative offenses formed the basis of Jones' prior conviction. See *United States v. Antonio-Agusta*, 672 F.3d 1209, 121 (10th Cir. 2012) (providing that in cases where the statute is ambiguous "a court can look beyond the statute to certain records of the prior proceeding, such as to charging documents, the judgment, and the terms of a plea agreement" to determine whether the prior conviction warrants an enhancement); see also *United States v. Venzor-Granillo*, 668 F.3d 1224, 1229 (10th Cir. 2012) (explaining that if the conviction is evaluated under the Guidelines' elements clause, the modified categorical approach has a narrow application; judicial

records may be consulted "only 'to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.' ") (quoting *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008)).

The Complaint relating to Jones' conviction clearly shows that Jones was charged with aggravated robbery committed by a person who is armed with a dangerous weapon ("armed robbery"). Thus, the Court had to determine whether that offense constitutes a "crime of violence" under the Guidelines' elements clause. Put another way, the issue became whether "the taking of property from the person or presence of another by force or by threat of bodily harm to any person" committed "by a person who is armed with a dangerous weapon" (K.S.A. §§ 21-3426, 21-3427 (1998)) requires the use, attempted use, or threatened use of violent, physical force against the person of another.

This determination involves a two-step inquiry: first, the Court "must identify the minimum 'force' required by [Kansas] law for the crime of [aggravated] robbery;" second, the Court must "determine if that force categorically fits the definition of physical force" required by the Guidelines. See *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017).

Jones argues that under *Nicholas*, Kansas simple robbery is not a crime of violence. Further, Kansas armed robbery "can be simply a robbery while in possession of a weapon," thus it is not a crime of violence because the statute "does not require an intentional threat to the victim," and "does not require the infliction or threat of serious bodily injury."

In *Nicholas*, the Tenth Circuit held that a conviction for simple robbery under K.S.A. § 21-3426 required nothing more than *de minimis* physical contact or the threat of physical contact. *Nicholas* at *3. This does not rise to the level of "violent force," and therefore did not qualify as a

"violent felony" under the elements clause of the Armed Career Criminal Act ("ACCA"). *Id.* In other words, Kansas simple robbery—"the taking of property from the person or presence of another by force or by threat of bodily harm to any person"—does not require the use, threatened use, or attempted use of "violent force."

In reaching this conclusion, the *Nicholas* Court first looked to Kansas law to determine the minimum force required by Kansas law to sustain a robbery conviction. In *State v. McKinney*, 265 Kan. 104, 961 P.2d 1 (1998), the Kansas Supreme Court concluded that "the mere act of snatching [a] purse 'constituted the threat of bodily harm' required for a robbery conviction." *Nicholas*, 2017 WL 1429788, at *3 (quoting *McKinney*, 961 P.2d at 8). Accordingly, the *Nicholas* Court concluded that "mere purse-snatching" was the lowest level of conduct that could support a conviction under the statute. *Id.* at *4.

Having determined the minimum force necessary under Kansas law to support a robbery conviction, the *Nicholas* Court then considered whether that force categorically fit the definition of "physical" or "violent force"—force capable of causing physical pain or injury to another person. The court recited two decisions from other circuits—*United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) and *United States v. Bell*, 840 F.3d 963, 964–67 (8th Cir. 2016). Both of these cases concluded that the relevant robbery statute at issue in the case could be applied to conduct falling short of violent force. Thus, the two robbery statutes analyzed in *Parnell* and *Bell* did not require the use, attempted use, or threatened use of physical force.

In *Parnell*, the Massachusetts armed robbery statute encompassed the "snatching of a purse from a victim's hand," which the court determined "does not constitute force 'capable of causing physical pain or injury to another person.' " *Parnell*, 818 F.3d at 979 (quoting *Johnson*, 559 U.S. at

140). And in *Bell*, the Missouri robbery statute supported a conviction based on testimony that the defendant "bumped" the victim's shoulder, "yanked" her purse away, and engaged in a "slight" struggle with the victim over the purse. *Bell*, 840 F.3d at 966. Under these facts, the *Bell* majority concluded that the robbery statute could be applied to conduct falling short of violent force. *Id.* In other words, the robbery statutes at issue in *Parnell* and *Bell* could both support a robbery conviction based upon the use of *de minimis* physical contact—which does not constitute force capable of causing physical pain or injury to another person.

The Tenth Circuit in *Nicholas* was unable to see an appreciable difference between the degree of force necessary to sustain a conviction under the robbery statutes at issue in *Parnell* and *Bell*, and the minimum force required by Kansas law to sustain a robbery conviction (mere purse snatching). Accordingly, the Tenth Circuit concluded that "Kansas robbery does not necessarily require the use, attempted use, or threatened use of violent force against the person of another." *Nicholas*, 2017 WL 1429788, at *5.

Shortly after *Nicholas* was decided, the Tenth Circuit Court applied *Nicholas* (holding that Kansas simple robbery was not a "violent felony" under the ACCA's elements clause) to hold that Kansas simple robbery was not a "crime of violence" under the Guidelines' elements clause. See *United States v. Reed*, 2017 WL 1908593, at *3 (D. Kan. 2017) (applying Nicholas to conclude that Kansas simple robbery was not a "crime of violence" under the Guidelines' elements clause because, under Tenth Circuit precedent, interpretations of the ACCA's elements clause apply with equal force to the Guidelines' elements clause and vice-versa). While instructive, these cases only solve one-half of the equation—Kansas simple robbery does not require the use of "violent force." But Jones' crime of conviction was for armed robbery under K.S.A. § 21-3427—which is simple robbery "committed

19

by a person who is armed with a dangerous weapon" K.S.A. § 21-3427 (1998) (emphasis added).

As such, the Court was presented with the issue of whether the additional element of being armed

with a dangerous weapon necessitates the use of a greater degree of force. It does not.

A Tenth Circuit panel ruled in *United States v. Bong*, 2019 U.S. App. LEXIS 2798 (10th Cir.

Jan. 28, 2019) that robbery under Kansas law can be accomplished with minimal force that falls short

of the "violent force" required under the Armed Career Criminal Act's elements clause. What's

more, Kansas aggravated robbery – a robbery committed by someone armed with a dangerous

weapon or who inflicts bodily harm during course of a robbery – is not violent, either. Merely being

"armed" with a weapon during the course of a robbery, the court said, is not sufficient to render the

state offense a "violent crime" for ACCA purposes.

The minimum "force" required by Kansas law for the crime of armed robbery is

indistinguishable from the minimum "force" required for the crime of simple robbery. In *State v.*

*Buggs*, 219 Kan. 203, 547 P.2d 720 (Kan. 1976), the Kansas Supreme Court explained the

distinction between simple and armed robbery.

The court wrote:

> The statute requires only that the robber be "armed with" a dangerous weapon, not
> that he use it or that the victim be aware of its presence. The mere presence of the
> weapon makes the crime aggravated—presumably because of the increased danger
> of personal harm the legislature foresaw from such presence, whether the weapon is
> used or not.

Thus, any robbery—even "mere purse-snatching"—committed while concealing a dangerous

weapon would constitute armed robbery under K.S.A. § 21-3427. The robber would not need to use

the weapon, and the victim would not even need to be aware of its presence. Accordingly, "mere

purse-snatching" is the minimum "force" required to support a conviction for armed robbery. And,

20

under *Nicholas*, such de minimis contact does not rise to the level of "violent force," i.e., force capable of causing physical pain or injury.

For that reason, the Court should agreed with Jones that the addition of the "dangerous weapon" element is not enough to satisfy the requirement of "physical force" under the Guidelines' elements clause. Of course, armed robbery is a serious and dangerous crime. And, as noted by the Kansas Supreme Court, the presence of a dangerous weapon may increase the danger of personal harm. *Id.* "The mere fact that an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way." *Parnell*, 818 F.3d at 980. Again, *Buggs* established that armed robbery does not require that the defendant use or display a weapon, or even make the victim aware of its presence. *Buggs*, 547 P.2d at 725. "There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force." *Parnell*, 818 F.3d at 980 (emphasis in original). Only the latter falls within the Guidelines' elements clause.

Offenses presenting only a risk of violence would fall within the Guidelines' residual clause. See USSG § 4B1.2(a)(2) (2015) ("The term 'crime of violence' means any offense . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another."). However, the U.S. Sentencing Commission promulgated an amendment to § 4B1.2, which modified the 2015 Manual. This amendment "eliminates the residual clause in the career offender guideline definition of 'crime of violence.' " Patti B. Saris, Definition of Crime of Violence (Aug. 1, 2016), as reprinted in U.S. Sentencing Comm., Supplement to the 2015 Guidelines Manual (2015). "Upon the August 1, 2016, effective date, the amended guidelines, as set forth in this document, will supersede the versions of §§ 4B1.1 and 4B1.2 set forth in the 2015 Guidelines Manual . . . and,

together with the rest of the 2015 Guidelines Manual, will constitute the operative Guidelines Manual. *Id.*

The mere possession of a weapon, therefore, does not bring the offense of Kansas armed robbery within the Guidelines' elements clause.

To determine whether a prior conviction under a statute that encompasses a single crime is a predicate violent felony offense under the ACCA, the court must apply a categorical approach, which focuses solely on the elements of the crime of conviction and whether they match the definition under the ACCA, while ignoring the particular facts of the case. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *United States v. McFee*, 842 F.3d 572, 574 (8th Cir. 2016) (stating that "[t]o determine whether a prior conviction qualifies as an ACCA predicate offense under the force clause, [courts] typically 'apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction'") (quoting *United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016)). In contrast, when a state statute is divisible, "in that it defines multiple crimes, some of which are ACCA predicate offenses 'and some of which are not, [courts] apply a modified categorical approach to look at the charging document, plea colloquy, and comparable judicial records for determining which part of the statute the defendant violated.'" *McFee*, 842 F.3d at 574–75. A list of alternative elements is divisible, but a list of alternative means is not. *Id.*; see *Mathis*, 136 S. Ct. at 2256.

Under the force clause, a prior conviction must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The meaning of "physical force" in § 924(e)(2)(B)(i) is a question of federal law, not state law. *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson (2010)*"). The phrase "physical force" in §

22

924(e)(2)(B)(i) "means violent force—that is, force capable of causing physical pain or injury to another person." *Id.*; *United States v. Williams*, 690 F.3d 1056, 1067-68 (8th Cir. 2012). The Nebraska Supreme Court's interpretation of state law, however, applies with respect to the determination of the elements of the underlying predicate crime. *Johnson (2010)*, 559 U.S. at 140.

"The elements of a crime 'are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty.'" *McFee*, 842 F.3d at 575 (quoting *Mathis*, 136 S. Ct. at 2248). If the elements of the crime of conviction "cover a greater swath of conduct than the elements of the relevant ACCA offense," then the conviction does not qualify as a predicate offense under the ACCA. *Mathis*, 136 S. Ct. at 2251.

### *Felon in Possession of a Home-Made Silencer*

On November 1, 2004, the United States Sentencing Commission amended the commentary to §4B1.2 captioned "Application Notes" to add as a "crime of violence" and exclude from the exception for possession of a firearm "unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun)." See App. C, Amend. 674 (Nov. 1, 2004); USSG § 4B1.2, comment. (n.1) (Nov. 1, 2004). The Reason for Amendment was that "Congress has determined that those firearms described in 26 U.S.C. § 5845(a) are inherently dangerous and when possessed unlawfully, serve only violent purposes. . . . The amendment's categorical rule incorporating 26 U.S.C. § 5845(a) firearms includes short-barreled rifles and shotguns, machine guns, silencers, and destructive devices." *Id.* Note that this unusual instance when the Commission gave a reason is instructive. If the defendant did not possess the firearm for violent purposes, but, for example, as a collector's item, the "categorical rule" making it a career offender predicate should not apply.

Jones contends his prior conviction for unlawful possession of a firearm silencer should not be counted as a prior crime of violence under section 4B1.1 because a silencer does not pose a threat as does a gun or other weapon.

A categorical approach, by which only the statutory definition of the crime is examined, is appropriate to determine whether a prior conviction is a crime of violence under section 4B1.1. *United States v. Alvarez*, 960 F.2d 830, 837 (9th Cir. 1992). The crime of possession of a firearm silencer does not have as an element the use, attempted use or threatened use of physical force required by section 4B1.2(1)(i). See Tex.Penal Code Ann. -321 § 46.06(a)(4) (West 1989 Supp. 1992). Thus, in order for the offense to be a crime of violence, it must "involve conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii).

Jones urges that this Court consider the following cases:

- *U.S. v. Huffhines*, 967 F.2d 314 (9th Cir. 1992), the Ninth Circuit, consistent with *Sahakian*, vacated Huffhines' sentence and remanded to the district court for resentencing on the basis that his crime of conviction, felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is not a crime of violence for sentencing under guideline section 4B1.1.

- *U.S. v. Twine*, 344 F.3d 987 (9th Cir. 2003), holding that Felon in Possession of a Firearm is not a "crime of violence" for purposes of § 3142 and the Bail Reform Act and does not otherwise fall within § 3142(f). This interpretation is in accord with its sister circuits who have ruled on this issue. See *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3rd Cir. 1986).

- In *United States v. Silva*, 133 F. Supp. 2d 104 (D. Mass. 2001), a magistrate judge reasoned that the felon in possession offense is not a crime of violence because not every felon is dangerous: "To be sure, many felons have committed violent offenses. Perhaps there is something in their nature, whether innate or acquired, biological or social, that has led them down the path of violence and mayhem. But it is the individuality of that person that is key to that dangerousness...." *Id.* at 112. The same logic can be applied to possessors of unregistered firearms, especially those without criminal histories.

A prior conviction qualifies as a "violent felony" under the ACCA or "crime of violence" under the career offender, if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."

18 U.S.C. § 924(e)(2)(B)(i). "Physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *United States v. Johnson*, 559 U.S. at 140 (2010).

Ordinarily, courts use the "categorical approach" to decide if a defendant's prior felony conviction was for a crime of violence. See, e.g., *United States v. Jonas*, 689 F.3d 83, 86 (1st Cir. 2012). Under this approach, the conviction counts as one for a crime of violence if the elements of the conviction fit the guidelines' definition of a crime of violence. Id. at 86–87.

Otherwise, the conviction does not count, no matter what the facts show the defendant actually did in committing the crime—even, that is, if those facts show he acted violently. *Id.* at 86.

This focus on the elements of the conviction—rather than the underlying conduct—fits with the text of the Sentencing Guidelines, which makes the base offense level for the felon in possession offense turn on prior "convictions of … a crime of violence," not on prior conduct. U.S.S.G. 2K2.1(a)(2), (3) (emphasis added); see *Descamps v. United States*, —— U.S. ——, 133 S.Ct. 2276, 2287, 186 L.Ed.2d 438 (2013). And this approach also ensures present sentences are not based on documents that could be old, might be uncertain or disputed, and may contain factual allegations the defendant did not contest at the time for any of a number of reasons unrelated to the accuracy of the allegations. *Descamps*, 133 S.Ct. at 2289.

Jones' underlying conviction for aggravated robbery and felon in possession of a silencer cannot qualify as a "violent felony" or "crime of violence" under the now-invalidated residual clause

of the Guidelines career-offender enhancement provision, nor does it qualify as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Without the predicate conviction for aggravated robbery and felon in possession of a silencer , Jones does not have the requisite two predicate convictions (of either "crime of violence" or "controlled substance") to qualify for a career offender enhancement. As a result, Jones' currently imposed sentence of 260 months (200 months on Count 3 and 60 months on Count 4) is now a per se illegal sentence in violation of the laws of the United States.

Several Circuit Courts of Appeals have concluded that an offense that results in physical injury or death, but does not require the use, attempted use, or threatened use of physical force, simply does not satisfy the "force clause."

The First, Second, Fourth, Fifth, and Tenth Circuits all agree that the mere causation of physical injury, or even death, does not necessarily require the use, attempted use, or threatened use of physical force. In essence, these circuits hold that "force" in the violent felony or crime of violence context does not encompass its indirect application. Thus, in the violent felony or crime of violence context, the term "physical" relates to how the force is generated. See *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1194 (10th Cir. 2008). This makes sense. "One cannot distinguish a 'physical force against the person of another' from a '[generic] force against the person of another' by looking to the consequences of the force." *Id.* Therefore, "the adjective physical must refer to the mechanism by which the force is imparted to the 'person of another.' " *Id.* In other words, courts must look only to "the means by which the injury occurs (the use of physical force)," and not to "the result of defendant's conduct, i.e., bodily injury." *Id.* at 1195.

26

See *Begay v. United States*, 553 U.S. 137, 145 (2008) ("the word ' 'use' . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct' which fact helps bring it outside the scope of the statutory term 'crime of violence' ") (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). "Several circuits have interpreted *Begay* as excluding crimes involving the mens rea of recklessness." *United States v. Ossana*, 638 F.3d 895, 901 (8th Cir. 2011) ("[W]e have identified no circuit-level cases post *Begay* in which a court found an offense qualified as a violent felony or crime of violence where the *mens rea* for the offense was mere recklessness and where there were no further qualifications to suggest purposeful, violent, or aggressive conduct").

In applying the modified categorical approach, sentencing courts may not look to factual assertions within federal presentence investigation reports—even if the defendant failed to object to the reports—where the source of the information in the reports might have been from a non-judicial source." *Ossana*, 638 F.3d at 903. The scope of judicial factfinding is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

The United States shoulders the burden to prove a prior conviction qualifies as a violent felony offense, see *United States v. Williams*, 905 F.2d 217, 218 (8th Cir. 1990), but here the government's proof is inadequate. The government offers from the record of conviction only the abstract of judgment and the felony information, but neither document answers the central question: whether the prior offense Jones was convicted of "has as an element the use, attempted use, or threatened use of physical force against the person of another" element of Missouri for possession of a silencer and Kansas aggravated robbery statute, which is encompassed by the federal ""crime of violence" definition in § 4B1.1.

The issue in this case is that Jones' statement made in the instant case appears in a document that is outside the "limited class of documents" from the record of a prior conviction upon which a sentencing court may rely to determine which version of an offense was the basis for a prior conviction. *Mathis*, 136 S. Ct. at 2249. We cannot assume from Jones' statement here that his Kansas aggravated robbery nor Missouri possession of a silencer was predicated on "has as an element the use, attempted use, or threatened use of physical force against the person of another" element of the statute. To do so would clash with the Supreme Court's "demand for certainty" when attempting to match a predicate offense with a federal statute. *Shepard*, 544 U.S. at 21. In fact, the Supreme Court has expressly forbidden reliance upon the underlying facts of a prior conviction to determine whether the prior offense categorically matches the federal statute at issue. *Descamps*, 133 S. Ct. at 2287 (a sentencing court cannot "discover what the defendant actually did" and then use those discovered facts to establish a categorical match); see also *SahagunGallegos*, 782 F.3d at 1100–01 (same).

With no judicially noticeable documents from the record of conviction that answer the question, Jones argues that the District Court has failed to demonstrate that his Kansas aggravated robbery or Missouri possession of a silencer conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another" element that is included within the federal "violent felony" definition. Accordingly, we cannot say that Jones' prior conviction for Kansas aggravated robbery nor Missouri possession of a silencer categorically qualified as a "crime of violence." The sentence therefore should be vacated.

Accordingly, Jones should be resentenced without the career offender enhancement. Absent the career enhancement, Jones' Total Offense Level would have been level 15 (after a three-level

reduction for acceptance of responsibility) and a Criminal History Category of IV (based on a total of 8 criminal history points), establishing an advisory Guidelines range of 30 to 37 months on Count 3 and 60 months on Count 4, to be served consecutively, for an aggregate sentence guideline of 90 to 97 months.

Finally, Jones asserts that the increase in the calculation of his sentencing range based on the career offender enhancement, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

## VI. **CONCLUSION**

For the above and foregoing reasons, Jones' sentence must be vacated for resentencing without the career offender enhancement. In the alternative, an evidentiary hearing should be held so that Jones may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: October 15, 2021

WILLIE V. JONES
REG. NO. 10311-045
FCI BASTROP
FEDERAL CORR. INSTITUTION
P.O. BOX 1010
BASTROP, TX  78602
Appearing *Pro Se*